IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICHARD STANDARD, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>HITT CONTRACTING INC., )<br>)<br>*Defendant*. )<br>) | Civil Action No. 1:16-cv-166 |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant HITT Contract Inc.'s ("HITT") Motion to Dismiss for failure to state a claim. Standard brings just one cause of action: discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). For the reasons outlined below, the Court finds good cause to GRANT the Motion.

### I. Background

HITT hired Plaintiff Richard Standard to work as its controller in 2002. In 2007, HITT promoted Standard to Treasurer and made him a Corporate Officer. In December of 2012, HITT hired a new CFO and informed Standard that he was being replaced as Treasurer. Shortly thereafter, on December 14, 2012, HITT gave Standard a letter that stated this change would take effect on February 13, 2015. The letter also outlined Standard's "transition to retirement." The letter stated that although Standard would assume new duties in February 2015, he would retain his salary and benefits. The letter also stated that Standard's employment would terminate on November 18, 2015. Finally, the letter stated that HITT would "leave open the possibility of working beyond that date on a consulting basis and as prospects may dictate." November 18,

1

2015, coincided with Standard's 66th birthday—the day Standard became eligible for full Social Security benefits.

Despite this letter, Standard asserts that Brett Hitt, one of HITT's co-Presidents, verbally assured him multiple times that HITT would retain him as a consultant after November 18, 2015. Around March of 2013, Standard had a "retirement party" to celebrate his transition into his new role at HITT. At the party, Brett said to Standard, "You're not going anywhere. I shouldn't even be here. You're not retiring." After Standard transitioned into his new role, he was permitted to work from home and come into the office whenever he had meetings.

Over time, HITT delegated Standard's duties to Brett's 29 year old son, Cullen. In early 2015, it became clear to Standard that he was permanently excluded from performing any meaningful duties at HITT. Standard sent Brett an email in February of 2015, asking him to explain HITT's plans for him going forward. Brett responded by saying that HITT no longer needed Standard to assist on any acquisitions or joint ventures, and that HITT only needed Standard to do banking oversight, a minor responsibility. HITT then terminated Standard's employment, as it stated it would, on November 18, 2015. HITT did not retain Standard as a consultant.

Standard asserts that his forced retirement was part of an overall scheme to eliminate all of HITT's older employees. Standard alleges that Brett Hitt spoke openly, sometimes in Standard's presence, about the forced retirement of older employees.

Standard filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2015. Standard withdrew his charge with the EEOC on February 3, 2016. Standard then filed his Complaint in this case on February 19, 2016.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Discussion

"Before a plaintiff may file suit under . . . the ADEA, he is required to file a charge of discrimination with the EEOC." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir.2009); 29 U.S.C.A. § 626(d). In Virginia, "this charge must be filed no later than 300 days after the alleged unlawful practice occurred . . . .'" *Lewis v. Norfolk Southern Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003) (quoting 29 U.S.C. § 626(d)(2)). "[T]he filing period runs from the time at

3

which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982); *see also Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). However, "the limitation period does not begin to run until the employee receives 'final and unequivocal' notice of the adverse employment decision in issue." *Connolly v. Mills Corp.*, 430 F. Supp. 2d 553, 557-58 (E.D. Va. 2006) (quoting *English v. Whitfield*, 858 F.2d 957, 961 (4th Cir. 1988)). That is, the limitation period begins to run when the employee knows "with certainty" that the adverse employment action will occur. *Id.* (quoting *Lendo v. Garrett County Board of Education*, 820 F.2d 1365, 1367 (4th Cir. 1987)).

### A. When Standard Knew With Certainty That He Was Going To Be Terminated

The critical question before the Court is when did Standard know, "with certainty," that he would be terminated on November 18, 2015. HITT argues that the 300 day clock began to run on December 14, 2012, when it gave the letter to Standard that unequivocally stated that his employment would be terminated on November 18, 2015. Standard argues, in contrast, that the 300 day clock began to run on February 5, 2015, the day Standard emailed Brett asking HITT to explain its plan for Standard going forward, and Brett responded that HITT no longer needed Standard to assist with any of his previous duties. Standard insists that the December 2012 letter was not final and unequivocal because Brett Hitt continued to reassure him that he would be retained as a consultant until the February 2015 email exchange.

The case law dictates that the limitations period began on December 14, 2012, the day HITT informed Standard that he would be terminated on November 18, 2015. *English v. Whitfield*, 858 F.2d 957 (4th Cir. 1988) is instructive on this point. The plaintiff in *English* was informed in a letter on May 15, 1984, that her temporary assignment, which had begun on March

16, 1984, was reduced to 90 days. *Id.* at 959. The plaintiff was informed that at the end of her temporary assignment she would be terminated. *Id.* However, the plaintiff was also told that during this temporary assignment, "she could search for and bid on available positions elsewhere in the facility for which she was qualified." *Id.* The plaintiff's last day of employment was July 27, 1984, and she was taken off of the payroll on July 30, 1984. *Id.* at 960. As late as July 24, 1984, the plaintiff's employer indicated to the plaintiff that it was trying to find a permanent position for her elsewhere in the facility. *Id.*

The *English* court found that the limitations period was triggered on May 15, 1984, when plaintiff received the letter indicating that she would be terminated at the end of her temporary assignment, rather than on June 30, 1984, the day plaintiff was finally discharged. *Id.* at 962. In reaching this conclusion, the *English* court explained that the May 15 letter contained "no intimation . . . that the decision was subject to further appeal, review, or revocation, either in whole or in part." *Id.* at 962. The only uncertainty contained in the letter was the possibility that plaintiff could obtain another position with her employer. *Id.* The court found this "uncertainty" inapposite because it was "related to a possibility of avoidance of the consequences of the decision by means unrelated to its revocation or reexamination by the employer." *Id.* In other words, even had the employer "'re-hired' [the plaintiff] into a new suitable position, such an act would not have erased and made non-actionable the May 15, 1984," decision to terminate her from her current position. *Id.* The court also did not find that the employer's continued communications to the plaintiff that they were attempting to find an alternative position for her rendered the May 15 letter ambiguous.

Similarly here, the December 12, 2012, letter contained no intimation that HITT's decision to terminate Standard on November 18, 2015 was subject "to appeal, review, or

5

revocation." Like in *English*, even if HITT had decided to keep Standard on as a consultant, that decision is separate from HITT's decision to terminate Standard and would not have rendered that decision inactionable. HITT's communications to Standard that it might retain Standard as a consultant are similar to the employer's communications to the plaintiff in *English* that it was trying to find her an alternative position. Following the Fourth Circuit's ruling in *English*, the Court finds any "reassurances" made to Standard did not make the December 2012 letter equivocal.

Standard relies heavily on *Connolly v. Mills Corp.*, 430 F.Supp.2d 553 (E.D. Va. 2006). The *Connolly* court held, primarily, that a notice given to an employee that they will be terminated in the future is equivocal—and thus does not trigger the statute of limitations—where the termination is contingent upon a future event that remains within the employer's control. *Id.* The employer, Mills, gave the plaintiff, Connolly, several notices that his employment was going to be terminated at a future date. *Id.* Mills initially told Connolly in September of 2002 that he would be terminated at the end of the year. *Id.* at 555. Then, in November of 2002, Mills informed Connolly that it would like to retain Connolly as a consultant after his termination. *Id.* 555-56. Connolly was terminated at the end of 2002, but protested when his benefits terminated in mid-January of 2003. *Id.* at 556. Mills then reinstated Connolly as an employee retroactive to December 31, 2002. *Id.* Connolly then continued working at Mills until November of 2005. *Id.* at 556-57. On several occasions during these years Mills attempted to have Connolly execute a consulting contract. *Id.* At the same time, Mills told Connolly that he would continue working as an employee until there was no more work available. *Id.*

Mills argued that it definitely notified Connolly on several occasions that his employment would be terminated when the parties had executed a consultant contract and that the statute of

limitations had run on these notifications. *Id.* at 560. The Court rejected this argument. Mills was in a position to manipulate the event that triggered termination: the finalization of a consultant contract. *Id.* at 559-61. Mills could thus string Connolly along, delaying the execution of the consultant contract, and thus termination, until the limitations period had run while telling Connolly that he would be retained so long as the company had enough work. *Id.* The court, therefore, found Mill's "notices" were not final and unequivocal because Connolly's termination was contingent on this uncertain future event which Mills could manipulate.

This case is entirely different. The December 2012 letter HITT gave to Standard clearly stated that his employment would be terminated on a definite date that was not contingent on any future event. Further, Standard's termination was not dependent on whether he was retained as a consultant or not. Significantly, the *Connolly* court held that, initially, Connolly had received "final and unequivocal notice in September of 2002 that he would be terminated at the end of the year." *Id.* at 558. Mill's statement in November 2002 that it would retain Connolly as a consultant after his discharge at the end of the year did not change this fact. *Id.* Mills then terminated Connolly, as it said it would, on December 31, 2002. The court explained that "[h]ad this been the end of the matter," had Mills not retroactively reinstated Connolly, "Mills would be correct that September 2002 would be the critical date for statute of limitations purposes." *Id.* The facts in *Connolly*, up until December 31, 2002, are nearly identical to the facts currently before the Court. In December 2012, HITT told Standard that he would be terminated on a definite date and told Standard that he might be retained as a consultant after his termination. HITT then in fact terminated Standard on the designated date. This was the "end of the matter" and, following *Connolly*, HITT is correct that December 14, 2012, is the critical date for the limitations period.

7

Both *English* and *Connolly* support HITT's position that the December 2012 letter triggered the 300 day limitations clock. Following these two cases, the Court finds Standard did not file his claim with the EEOC until far after the 300 day limitations period had run. Standard's claim is thus untimely and must be dismissed.

### B. Whether Equitable Estoppel Should Apply

Standard argues that equitable estoppel should apply to allow him to bring this claim, even if it is untimely. Equitable estoppel applies, and operates to toll the statute of limitations, "where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). The Fourth Circuit has applied equitable estoppel when "the employee's failure to file in timely fashion results from (i) a deliberate design by the employer or (ii) actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Connolly*, 430 F.Supp.2d at 561; *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982). The only actions that Standard points to are HITT's "conflicting messages regarding his future with the company," for example, Brett Hitt's statement to Standard at his retirement party that he was "not going anywhere."

First, HITT did not make any equivocal statements about Standard's future with HITT as an employee. HITT definitively stated in the December 2012 letter that Standard would be terminated on November 18, 2015. Any statements about retaining Standard as a consultant do not change this fact. Second, the Fourth Circuit has made clear that "[a]n employee's hope for rehire, transfer, promotion, or a continuing employment relationship . . . cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on his rights." *Price*, 694 F.2d at 965. Even when an employer has confirmed an employee's hope of a continuing

8

employment relationship, courts will not apply equitable estoppel "absent some indication that the promise was a quid-pro-quo for the employee's forbearance in filing a claim." *English v. Whitfield*, 858 F.2d 957, 963 (4th Cir. 1988). All Standard has alleged was a hope of continuing his employment with HITT as a contractor. Standard has not identified any acts committed by HITT that were intentionally misleading or manipulative. Any statement made by HITT that Standard was going to be retained as a contractor is simply not enough to justify applying equitable estoppel. Accordingly, the Court finds that equitable estoppel does not apply in this case to toll the statute of limitations, which had long since expired when Standard filed his EEOC complaint.

## IV. Conclusion

Standard's claim is untimely. He allowed three years to pass after he was told, unequivocally, that he was going to be terminated before filing his claim with the EEOC. Any statements made by HITT that he might be retained as a contractor do not change the fact that Standard knew he would be terminated on a specific date. Equitable estoppel also cannot save Standard's claim as Standard has not alleged that HITT intentionally mislead him into sleeping on his rights. The Court, therefore, finds good cause to GRANT the Motion to Dismiss. An appropriate Order will issue.

April 13, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge

9